United States District Court
Southern District of Texas
**ENTERED**
February 07, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| LEROY PUNCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:22-CV-00022 |
| | § | |
| VICTORIA CNTY. JAIL MEDICAL DEP'T, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Leroy Punch, a prisoner appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c);[1] 28 U.S.C. §§ 1915(e)(2), 1915A. For purposes of screening and pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the undersigned recommends that Plaintiff's § 1983 claims be **DISMISSED WITHOUT PREJUDICE.** The undersigned also recommends that Plaintiff's second request for appointment of counsel (Doc. No. 24) be **DENIED** as moot.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1] Under this provision, "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2).

**B. Proceedings.**

Plaintiff is a state prisoner currently housed in the Victoria County Jail in Victoria, Texas. This facility lies within the Victoria Division of the Southern District of Texas. Plaintiff is a pre-trial detainee. *See* Case No. 21-01-32610-D & Case No. 21-11-33301-D found at Victoria County Records Inquiry, *Criminal Case Records*, Search: Last name—Punch, odyssey.vctx.org/Search.aspx (last visited Feb. 4, 2023).

Plaintiff filed this action on June 23, 2022. (Doc. No. 1.) He amended his complaint on August 1, 2022. (Doc. No. 7.) He also submitted a rambling unsworn declaration couched as a letter to the Attorney General of the United States, in which he claimed that he was the subject of what he calls an "illegal brain computer interface experiment." (Doc. No. 9-1, p. 1.) After granting Plaintiff leave to proceed *in forma pauperis*, *see* Doc. No. 13, the Court consolidated this case with another § 1983 action in which Plaintiff lodged nearly identical claims against many of the same defendants. *See* Doc. No. 17; *Punch v. Marr*, No. 6:22-cv-00031 (S.D. Tex.). Plaintiff submitted a supplement to his amended complaint, along with an additional memorandum. (Doc. Nos. 16, 18.)

The undersigned then directed Plaintiff to provide a more definite statement explaining his claims. (Doc. No. 19.) In response, Plaintiff submitted a four-page statement alleging, among other things, that his poetry was being stolen directly from his mind through a "brain computer interface." (Doc. No. 20, p. 1.) Plaintiff also submitted a more focused memorandum with additional details about his § 1983 claims and named 27 individual defendants. (Doc. No. 22.)[2]

---

[2] Those individual defendants, as identified by Plaintiff, are Captain Williamson, Sheriff Marr, Sergeant Valadez, Nurse Ullman, Nurse Gayle, Nurse Laqua, Corporal Flores, Corporal Garcia, maintenance worker Moralez, Officer Garza, Officer Gabrish, Officer Little, Ms. Barrela, "Ms. S.," Officer Emrick-Smith, Ms. Mathis, Officer Walters,

Plaintiff's more definite statement repeatedly references the "brain computer interface." *See* Doc. No. 22.  This concept appears to be tied to a belief by Plaintiff that people – some of whom are unidentified – are trying to control his mind.  (Doc. No. 9-1, p. 1.)  Plaintiff states that he is "at the mercy and mental [instability] of a mind mob.  In this case people not in law [e]nforcement here and in free society also key members of the Victoria County Jails Administrations in this Psyop (Psychological Operations) in the guise of a [b]rain [c]omputer [i]nterface [e]xperiment."  *Id*. at 2.  Plaintiff believes the "control" is coming from the mind mobs' "technology that was illegally created and still attached to my I-phone and I-watch that were taken from me upon arrest, also not given back to me and may have been illegally appropriated."  *Id*.  Plaintiff does not claim that the "brain computer interface" experiment was initiated at the jail; rather, he believes that it was done to him prior to his incarceration.  *Id.* at 3.  Despite these descriptions of the "brain computer interface," and other somewhat meandering statements,[3] Plaintiff does sufficiently articulate his claims in the more definite statement, enough to enable the undersigned's screening of his case.  Not all of Plaintiff's claims are based on the "brain computer interface"; those that are, however, are obviously delusional, and the undersigned concludes that those claims are frivolous.  These claims are identified where relevant throughout this memorandum.

Liberally construed, Plaintiff alleges four main claims: (1) religious discrimination; (2) inadequate medical care in violation of the Fourteenth Amendment; (3) retaliation; and (4) "hate

---

Officer T. Gilbert/Hennikie, Officer Ellis, Officer Charleston, Sergeant Gonzalez, Officer Leimke, Officer Eshenburg, Corporal Johnson, Officer Partida, Officer Moreno/Avila, and Breana Garcia/Flores.

[3]  For example, Plaintiff complains of "extortion" by the jail's phone system company for what he believes are excessive phone charges for speaking with his wife and demands an audit.  (Doc. No. 20, p. 4.)  He claims that he is singled out for excessive charges, and that the money is given to other jail inmates.  *Id.*  He also asks the Court to check with the Library of Congress, to see if any of Plaintiff's poems "have been sent in, in an altered form."  *Id*, at 3.

crimes" and harassment.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  No process has been issued in this case.  The undersigned is satisfied that Plaintiff has pleaded his best case.  The case is now ripe for screening.

Plaintiff includes a statement in his unsworn declaration/letter to the Attorney General that he was found incompetent to stand trial in his state criminal case.  (Doc. No. 9-1, p. 1.)  A review of the docket sheet for Plaintiff's pending state criminal case reveals an entry reflecting that Plaintiff was indeed found incompetent to stand trial.  This finding followed an examination of Plaintiff.  Plaintiff's criminal case has apparently been stayed while further examination or treatment occurs.  Additional discussion of this issue appears below.

### C.  *Legal standard for screening.*

When a prisoner seeks to proceed *in forma pauperis*, the court shall evaluate the complaint and dismiss it without service of process if the court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).  A claim has no arguable basis in fact if, "after providing the plaintiff the opportunity to present

additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Additionally, a plaintiff's suit may be dismissed as frivolous pursuant to § 1915(e)(2)(B) if it makes factual allegations that are "fanciful," "fantastic," or "delusional." *Denton*, 504 U.S. at 32-33 (quoting *Neitzke*, 490 U.S. at 325, 328).[4]

"In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (*per curiam*) (citations omitted).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, "the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The factual allegations must raise the plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, the plaintiff's claim should not be dismissed.  *Id.*  Furthermore, as Plaintiff proceeds *pro se*, the Court construes his complaint liberally in his favor. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines*, 404 U.S. at 520).

---

[4] *See also Owen v. United States*, No. S-06-2529, 2007 WL 1087188, *2 n.3 (E.D. Cal. Apr. 10, 2007) (plaintiff's claim that the United States Attorney had implanted a microchip in the plaintiff's head was "palpably frivolous").

### D. *Federal Rule of Civil Procedure 17(c)(2).*

The docket sheet in Plaintiff's pending state criminal case indicates that Plaintiff has been found incompetent to stand trial.  His criminal case appears to be indefinitely postponed.  The undersigned takes judicial notice of this fact.  *See* Case No. 21-01-32610-D & Case No. 21-11-33301-D, found at Victoria County Records Inquiry, *Criminal Case Records*, http://odyssey.vctx.org/CaseDetail.aspx?CaseID=2206394 (last visited Jan. 31, 2023); *see also* Fed. R. Evid. 201(c)(1).  Plaintiff mentions this finding in his filings.  *See* Doc. No. 9-1, p. 1.

The docket sheet in Plaintiff's criminal case reflects that an examination was ordered and that a report was received.  *See* Case No. 21-01-32610-D, found at Victoria County Records Inquiry, *Criminal Case Records*, http://odyssey.vctx.org/CaseDetail.aspx?CaseID=2206394 (last visited Feb. 7, 2023).  It appears that an incompetency trial was conducted, resulting in a finding that Plaintiff was incompetent to stand trial.  *See id.*  Plaintiff's incompetency finding, then, means that a court has determined that he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against [him]."  *See* Tex. Code Crim. Proc. art. 46B.003(a)(1)-(2).[5]

---

[5] Under Texas law, a defendant is presumed to be competent to stand trial, and is to be so found unless proved incompetent by a preponderance of the evidence. Tex, Code Crim. Proc. art. 46B-003(b).  A defendant's competency can be questioned by either party, or by the trial court on its own motion.  *Id.* at art. 46B.004(a).  If a suggestion of incompetency is made, then the trial court conducts an informal inquiry; the court shall order an examination of the defendant if that informal inquiry causes the court to determine that there is evidence to support a finding of incompetency.  *Id.* at art. 46B.004(d).  A trial on the issue may be held.  *Id.* at art. 46B.005(b), (c); art. 46B, Subchapter C.  Such a trial appears to have occurred in Plaintiff's case.  *See* Doc. No. 9-1, p. 1.  When a felony defendant is found to be incompetent, the criminal trial is to be continued, *id.* at art. 46B.053, and the defendant shall be either released on bail or committed to a mental health facility or a jail-based competency restoration program.  *Id.* at art. 46B.071(a)(2).  The undersigned is aware that there can be a long wait for mental health facilities and jail-based competency restoration programs, which can result in inmates' remaining in jail while awaiting such treatment.

Federal Rule of Civil Procedure 17(c)(2) provides that the court "must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). The Fifth Circuit has interpreted Rule 17(c)(2) to mean, in the context of a plaintiff pursuing civil litigation *pro se*, that:

> Rule 17(c) does not make the appointment of a guardian ad litem mandatory. If the court feels that the infant's [or incompetent person's] interests are otherwise adequately represented and protected, a guardian ad litem need not be appointed. But the rule does not mean that a trial judge may ignore or overlook such a fundamental requirement for the protection of infants [or incompetent persons]. We spell out the rule to mean: (1) as a matter of proper procedure, the court should usually appoint a guardian ad litem; (2) but the Court may, after weighing all the circumstances, issue such order as will protect the minor [or incompetent person] in lieu of appointment of a guardian ad litem; (3) and may even decide that such appointment is unnecessary, though only after the Court has considered the matter and made a judicial determination that the infant [or incompetent person] is protected without a guardian.

*Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984) (quoting *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) (emphasis deleted, bracketed text as it appears in *Adelman*).[6] Within the Fifth Circuit, at least district court two cases, citing out-of-circuit authority, have concluded that legal adjudication of incompetence, when brought to the court's attention, results in Federal Rule of Civil Procedure 17(c)(2)'s provisions being "brought into play." *Schreck v. City of Amarillo*, 2021 WL 5178855, at *3 (N.D. Tex. Nov. 8, 2021); *Maas v. BP Exploration & Prod., Inc.*, 2020 WL 3868447, at *2 & n.5 (E.D. La. July 8, 2020) (citing *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)).

The Fifth Circuit interprets the rule's term "incompetent person" to refer to a person without the capacity to litigate under the law of the person's state of domicile. *Thomas v.*

---

[6] The language of Rule 17(c) as it existed in 1984 differed from the rule's current language, but not substantially. Rule 17(c) in 1984 stated, "The court *shall* appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action *or shall* make such other order as it deems proper for the protection of the infant or incompetent person." *See Adelman*, 747 F.2d at 989.

*Humfield,* 916 F.2d 1032, 1035 (5th Cir. 1990); *see also Hart v. Wells Fargo & Co.*, No. 3:14-CV-3796-N, 2014 WL 6901831, at *2 (N.D. Tex. Dec. 8, 2014). "In Texas, the standard is whether individuals, 'by reason of mental or bodily infirmity, [are] incapable of properly caring for their own interests in the litigation.'" *Magallon v. Livingston,* 453 F.3d 268, 271 (5th Cir. 2006) (quoting *Lindly v. Lindly,* 102 Tex. 135, 141, 113 S.W. 750 (1908)). The standard for incompetency in Texas criminal cases is worded differently, as discussed above, but the substance of the standards is similar. For purposes of this memorandum and recommendation, the undersigned will assume that Plaintiff is incompetent, based on the state court finding and the undersigned's own review of Plaintiff's filings, but need not decide that question definitively, for the reasons discussed next.

A court should not reach the merits of any possibly incompetent plaintiff's actions without first appointing a suitable representative. *See Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). A court may, however, dismiss an action without prejudice – that is, without reaching the merits – without appointing a guardian ad litem, if it is clear that no substantial claim could be asserted on the incompetent person's behalf based on the allegations in the complaint. *See Berrios*, 564 F.3d at 135; *see also Berry v. Daly*, No. 2:16-cv-14495, 2017 WL 410339, at *2 (E.D. Mich. Jan. 30, 2017) (dismissing *pro se* complaint without prejudice at the screening stage without appointing guardian ad litem because complaint was frivolous); *Moreno v. Perez*, No. EDCV 15-2548-CAS (JPR), 2016 WL 1000318, at *2 (C.D. Cal. Mar. 14, 2016) (dismissing complaint by incompetent plaintiff without prejudice and holding that the court "need not appoint a guardian because it was "clear that no substantial claim can be raised on Plaintiff's behalf based on the allegations" of the complaint); *Vasquez v. New York State Office of Mental Health*, No. 9:16-CV-0320, 2016 WL 1312567, at *5 & n.5 (N.D.N.Y. Apr. 4,

2015) (same); *Mahoney v. New Hampshire*, No. 14cv431-JD, 2015 WL 3794854, at *2 (D.N.H. June 17, 2015) (same); *Powell v. Symons,* 680 F.3d 301, 307 (3d Cir. 2012) (inquiry into whether to appoint guardian ad litem for pro se litigant "would usually occur after the preliminary merits screening").

In *Harris v. Mangum*, 863 F.3d 1133 (9th Cir. 2017), like in this case, a plaintiff who had previously been found incompetent for trial in a criminal case pending against him in state court filed a civil lawsuit.  The district court reviewed the plaintiff's complaint, found his claims to be frivolous, and dismissed the suit.  *Id*. at 1136.  The district court's decision was appealed, and the Ninth Circuit, although it agreed that the lawsuit was frivolous, "ordered a limited remand to the district court for the purpose of considering whether Federal Rule of Civil Procedure 17(c)(2) required the court to evaluate [the plaintiff's] competence and consider the appointment of a guardian ad litem or issuance of another appropriate order."  *Id*.

In this case, Plaintiff's allegations fail to survive screening pursuant to § 1915(e)(2). Here, the Court assumes Plaintiff's incompetence and has considered the appointment of a guardian ad litem or issuance of any other order.  It finds that none is needed.  Accordingly, the undersigned recommends dismissal of Plaintiff's claims without prejudice and recommends a finding that Plaintiff's interests in this litigation are adequately protected by the Court's screening without the *sua sponte* appointment of a guardian ad litem, even if Plaintiff is "incompetent" as defined by Texas law.  The undersigned's screening of Plaintiff's claims appears next.

### E. *Plaintiff's claims fail to survive screening under § 1915(e)(2).*

Section 1983 of Title 42, United States Code, provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S.

637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting

under the color of state law deprived him or her of a right secured by the Constitution or laws of

the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts

under color of state law if he or she misuses or abuses official power and if there is a nexus

between the victim, the improper conduct, and the defendant's performance of official duties.

*Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action."

*Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat*

*superior* liability of supervisors under § 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th

Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of

subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the

acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that

causally result in the constitutional injury."  *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

"A policy is normally an official statement, ordinance, or regulation, but in certain circumstances

a persistent, widespread practice that is so commonplace as to constitute a custom can also be

treated as policy."  *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar.

28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

### 1.  *Plaintiff's allegations against the Victoria County Jail Medical Department and the Victoria County Jail Administration.*

In his original complaint, Plaintiff stated that only the Victoria County Jail Medical

Department and the Victoria County Jail Administration "will be the defendants in this suit."

(Doc. No. 1, p. 1.)  Subsequently, the undersigned ordered Plaintiff to provide a more definite

statement of his claims.  (Doc. No. 19.)  In response, Plaintiff provided additional details about his § 1983 claims and named 27 individual defendants.  (Doc. Nos. 20, 22.)  Plaintiff did not, however, name either the Victoria County Medical Department or Victoria County Jail Administration in response to the undersigned's questions specifically asking Plaintiff to describe the actions of each defendant relating to his potential claims.

Plaintiff cannot sue a county medical department or the jail administration, as they are nonjural entities.  *See*, *e.g.*, *Wilson v. Dallas Cnty. Jail*, No. 3:20-CV-02792-C (BT), 2022 WL 1176749, at *2 (N.D. Tex. Mar. 16, 2022), *adopted*, No. 3:20-CV-2792-C, 2022 WL 1173802 (N.D. Tex. Apr. 20, 2022) (citing *Pantoja v. Dallas Cnty. Jail*, No. CIV.A.3:01-CV-1620-L, 2001 WL 1343437, at *1 (N.D. Tex. Oct. 31, 2001) (neither the Dallas County Jail nor its medical staff and medical department are separate legal entities subject to suit under § 1983)).  And although Plaintiff could potentially sue individual members of the Victoria County Jail's administration, Plaintiff does not allege how these potential defendants either affirmatively participated in the acts that caused his alleged constitutional deprivations, nor does Plaintiff explain how these defendants implemented unconstitutional policies that resulted in the alleged constitutional injuries.  *See Porter,* 659 F.3d at 446.  Accordingly, the undersigned recommends that Plaintiff's allegations against the Victoria County Jail Medical Department and the Victoria County Jail Administration be dismissed without prejudice.

### 2. *Plaintiff's religious discrimination allegations.*

Plaintiff claims that he was subjected to "religious discrimination" in the Victoria County Jail.  Plaintiff alleges that he is a Muslim who is unable to "practice [his] religion properly [and is] also being hated and mocked because of the fact that [he is] a Muslim."  (Doc. No. 22, p. 1 ¶ 1 (cleaned up).)  Plaintiff lodges several allegations in support of this claim.  First, Plaintiff

alleges that he is being prevented from practicing his religion by "being bothered and harassed (in times of prayer and meditation)" through the jail's alleged use of a "brain computer interface." *Id.* at 1 ¶ 2.  Plaintiff states that he has stopped praying and reading his Quran while in the jail because Plaintiff feels that this harassing treatment "is an affront to Allah."  *Id.* Plaintiff claims generally that all of the defendants with the exception of Captain Williamson and Sheriff Marr "were actively a part of or listened in on mockery and abuse [and] also [encouraged] said abuse through [e]stablished [b]rain [c]omputer [i]nterface."  (Doc. No. 22, p. 1 ¶ 3.)  Plaintiff states that Captain Williamson "allowed" the alleged religious discrimination by being aware of Plaintiff's allegations of abuse and harassment as well as Plaintiff's request for a unit transfer as an "informal resolution to the matter," but did not act on this information.  *Id.* at 1 ¶ 4.

Plaintiff also alleges that Sergeant Valadez denied Plaintiff's religious preference by denying that Plaintiff is a practicing Muslim. *Id.* at 2 ¶ 5.  Allegedly, Sergeant Valadez said that Islamic inmates are "nondenomination[al]."  *Id.*  According to Plaintiff, Plaintiff should have been documented in the Victoria County Jail records as a practicing Muslim.  *Id.*

Plaintiff also claims that his wife sent him a Quran with prayer beads, a kufi,[7] a prayer rug, and a Rastafarian bible.  (Doc. No. 22, p. 2 ¶ 6.)  According to Plaintiff, these items were "sent back or appropriated in retaliatory punishment for filing grievances."  *Id.* (cleaned up). Although Plaintiff's wife allegedly did receive the prayer rug back, she allegedly did not receive the Quran, kufi, prayer beads, or Rastafarian bible.  *Id.*

---

[7] "The Kufi cap is a small, round, head covering with religious significance for Muslims."  *Muhammad v. Lynaugh*, 966 F.2d 901, 902 n.1 (5th Cir. 1992).

Finally, Plaintiff claims that he was forced to eat pork while housed in the Victoria County Jail's segregation unit.  (Doc. No. 22, p. 3 ¶ 1.)  Plaintiff was allegedly fed pork from July 2021 until December 2021 during the last meal of the day, which was scheduled between 6:45 and 7:45 p.m.  *Id.*  Plaintiff also alleges that this forced feeding was in retaliation for writing grievances related to his treatment in the jail and for having "mind sex" with female officers in the jail.  *Id.* at 3 ¶ 3-4.  Plaintiff claims that Defendants are watching to see if he will "defile" himself by eating pork.  *Id.* at 3 ¶ 5.

Plaintiff requests monetary relief for these alleged wrongs in the amount of $2.5 million for alleged pain and suffering, emotional abuse, and humiliation.  (Doc. No. 22, p. 2 ¶ 7.)  He also seeks injunctive relief: he desires that the Victoria County Jail "chang[e] their rules toward the Islamic community."  *Id.*  He also asks to be moved to another jail.  (Doc. No. 20, p. 3.)

Plaintiff's claims, liberally construed, might reasonably be read as raising an equal protection claim, a free exercise claim, or perhaps a claim under the Religious Land Use and Institutionalized Persons Act.  Even with liberal construction, Plaintiff is not claiming that he is being treated differently from people of other religions.  But because Plaintiff generally repeats allegations of "discrimination," and implies that the denial of religious materials and being forced to eat pork arise from Plaintiff's alleged status as a Muslim inmate, as opposed to a member of another religion, the undersigned addresses Plaintiff's claims in all three contexts.

### a.  Equal protection.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations

omitted); *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).  To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently."  *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted).  If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny."  *Id.* at 353-54.  If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose."  *Id.* at 354.

Further, to establish an equal protection violation, a plaintiff also must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated."  *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).  The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made."  *Wood*, 836 F.3d at 538–39 (internal quotation marks and citation omitted).

Plaintiff's religious discrimination allegations against Captain Williamson, Sergeant Valadez, Nurse Ullman, Nurse Gayle, Nurse Laqua, Corporal Flores, Corporal Garcia, Corporal Johnson, Breona Garcia, maintenance worker Moralez, Ms. Barrela, Ms. Mathis, Ms. S, Officer Charleston, Officer Ellis, Officer Eshenburg, Officer Gabrish, Officer Garza, Officer Leimkie, Officer Little, Officer T. Gilbert/Hennikie, Officer Walters, an unnamed officer and Sergeant Gonzalez are frivolous.  Primarily, Plaintiff alleges that he is being prevented from practicing his religion stem because of interference by these defendants through the delusional "brain computer

interface."[8]  In addition, Plaintiff does not specify, despite being directed to be specific in his more definite statement, how he was treated differently than inmates of other religions other than through asserting general, threadbare, and conclusory statements about religious discrimination. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff also does not specify how any of the defendants had any personal involvement in discriminating against Plaintiff on the basis of religion.  *See Thompson*, 709 F.2d at 382.  Accordingly, Plaintiff's claims against these defendants should be dismissed.

The two defendants about whom Plaintiff does allege specific facts, Captain Williamson and Sergeant Valadez, are supervisory officials.  As such, Plaintiff is required to present facts either demonstrating their individual, affirmative participation in acts that caused Plaintiff's constitutional deprivation or otherwise showing that these defendants implemented unconstitutional policies that resulted in Plaintiff's constitutional injuries.  *See Porter*, 659 F.3d at 446.  Plaintiff has not done this, despite having been given an opportunity to do so in his more definite statement, so his claims against Captain Williamson and Sergeant Valadez should be dismissed as well.  For the same reasons, Plaintiff's frivolous "brain computer interface" allegations of religious discrimination also render frivolous his claim that the jail's supervisors allegedly allowed that discrimination to occur: if the allegations underlying the religious discrimination claim are themselves frivolous (here, allegations about the "brain computer

---

[8] There is such a thing as a "brain-computer interface," but it is not a mind control device.  Brain-computer interfaces (BCIs) acquire brain signals, analyze them, and translate them into commands that are relayed to output devices that carry out desired actions.  Jerry J. Shih, Dean J. Krusienski, & Jonathan R. Wolpaw, *Brain-Computer Interfaces in Medicine*, Mayo Clin. Proc. 268, 268 (2012), https://www.mayoclinicproceedings.org/action/showPdf?pii=S0025-6196%2812%2900123-1.  BCIs do not use normal neuromuscular output pathways.  *Id*.  The main goal of BCIs is to replace or restore useful function to people disabled by neuromuscular disorders such as amyotrophic lateral sclerosis, cerebral palsy, stroke, or spinal cord injury.  *Id*.  Plaintiff does not allege that he is an ALS patient, or that he suffers from any of these other conditions.

interface"), then a supervisory defendant cannot be held liable for "allowing" those actions to happen.

Likewise, refusing Plaintiff's request to transfer to another prison is not a constitutional violation. *See Thomas v. Pearson*, 342 F. App'x 21, 22 (5th Cir. 2009) (a prisoner has no constitutional right to be incarcerated in the facility of his or her choice). Plaintiff also does not establish that he has a constitutional right to have his religion, or any other information, be reflected in any particular way in a jail record. Additionally, if Sergeant Valadez did make an error in documenting what religion Plaintiff is practicing, or even if he deliberately refused to list Plaintiff as a Muslim, Plaintiff has not alleged any violation of any constitutional right stemming from that action. The undersigned concludes that Plaintiff's allegations of religious discrimination, viewed in the context of equal protection, are frivolous.

### b. Free exercise.

Plaintiff alleges that he was hindered from praying, that he was not appropriately labeled as Muslim, that he was denied certain religious items, and that he was forced to eat pork for several months in 2021 (though he only describes one particular instance, discussed below). Plaintiff implies – liberally construed, because he does not state as much – that these actions kept him from fully exercising his religion.

"Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is reasonably related to legitimate penological interests." *Butts*, 877 F.3d at 584–85 (internal quotation marks and citations omitted). To assist the courts in determining this, the Supreme Court enumerated four factors:

> (1)   [W]hether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that

remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at 89–90).

Courts are not "required 'to weigh evenly, or even consider, each of these factors.'" *Fluker v. King*, 679 F. App'x 325, 330 (5th Cir. 2017) (citing *Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77, 80 (5th Cir. 1992)). "Factor one is controlling; the other factors merely help a court determine if the connection *is* logical." *Id.* (citing *Scott*, 961 F.2d at 81) (internal citation marks omitted) (emphasis in original). "[D]e minimis burdens on the free exercise of religion are not of constitutional dimension." *Joseph v. Ware*, No. CIV.A. 07-1297, 2007 WL 4144923, at *2 (W.D. La. Oct. 22, 2007) (citations omitted).

Plaintiff's first allegation can be rejected immediately: he alleges that he was prevented from praying, but that allegation is based wholly on the delusional "brain computer interface." He does not claim that any of the defendants actually harassed or abused Plaintiff in any other way while he was praying—Plaintiff's allegations are tied solely to the alleged "brain computer interface" and are frivolous.

Plaintiff's complaint that he was not properly labeled as a Muslim in the jail's records is not tied to any harm. Plaintiff does not allege, for example, that any improper labeling in jail records led to his being fed pork; to the contrary, he specifically argues that he was fed pork in retaliation for filing grievances. He also does not explain why he allegedly has any right to be reflected in any particular way in the jail's record.

Plaintiff's free exercise claim is thus reducible to two allegations: that he was denied certain religious materials and that he was fed pork.  These allegations, alone or in combination, do not amount to a viable free exercise claim.

First, Plaintiff does not allege that he suffered a greater-than-*de minimis* physical injury (or indeed, any physical injury at all) from the alleged denial of the Quran, kufi, prayer beads, and Rastafarian Bible that were allegedly being sent to him.  *See Carter v. Hubert*, 452 F. App'x 477, 479 (5th Cir. 2011) (citing 42 U.S.C. § 1997e(e)); *Mayfield v. Texas Dep't of Criminal Justice,* 529 F.3d 599, 605–06 (5th Cir.2008);  *Geiger v. Jowers,* 404 F.3d 371, 374–75 (5th Cir.2005)) (additional citations omitted).  He also does not allege that he was denied the religious articles he needs for exercise of his religion – he alleges only the denial of the specific inbound articles that his wife allegedly sent.  In fact, Plaintiff's own allegations reflect that he did have access to a Quran, as he mentions that the "BCI" is interfering with his reading a Quran; it is just likely not the Quran that his wife allegedly sent.  (Doc. No. 22, p. 1 ¶ 2.)  Plaintiff seeks monetary relief for this alleged denial "for pain and suffering also emotional abuse and humiliation," but he cannot recover any compensatory damages from the alleged conduct because he fails to allege or demonstrate any physical injury.[9]

Plaintiff also seeks injunctive relief, in the form of the jail's "changing its rules toward the Islamic community."  (Doc. No. 22, p. 2.)  But Plaintiff does not identify any policy, rule, or regulation that he thinks has violated the Free Exercise Clause.  *Cf. Muhammad v. Lynaugh*, 966 F.2d 901, 902-03 (5th Cir. 1992).  Therefore, the Court cannot provide Plaintiff's requested

---

[9]  To the extent Plaintiff could be viewed as complaining of deprivation of this property, his claim is also not cognizable under § 1983 because Plaintiff may bring forth a tort action for conversion under Texas state law as an adequate post-deprivation remedy.  *See Franklin v. Blair*, 806 F. App'x 261, 263 (5th Cir. 2020).

injunctive relief either, because Plaintiff has not alleged the existence of any allegedly unconstitutional rule to change: his complaint appears to be limited to actions that occurred on one specific occasion, not that those actions were impelled by any policy.[10]

As for Plaintiff's allegations about being fed pork, this too, even in combination with the alleged denial of the religious items, is not enough to state a free exercise claim.  The Fifth Circuit has held that "prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski*, 486 F.3d at 122.  Plaintiff also does not allege any physical injury from allegedly being fed the pork.  Therefore, he cannot recover the monetary damages he seeks.  *See* 42 U.S.C. § 1997e(e).  Further, Plaintiff does not allege that he was fed pork because of any jail regulation or policy discriminating against Muslims, much less a rule or policy that extended to denial of religious items as well.  Thus, he fails to allege a viable claim for injunctive relief either, because he does not identify the existence of any allegedly unconstitutional rule to change.   The undersigned concludes that Plaintiff's allegations of religious discrimination, viewed in the context of free exercise, are frivolous.

### c. RLUIPA.

It is unclear whether Plaintiff is attempting to raise an allegation under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).  Plaintiff does not mention RLUIPA in his submissions.  In an abundance of caution, however, the undersigned addresses the question here.

The RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation

---

[10] In addition, Plaintiff has not identified any defendants who have the authority to make a rule change.

for the exercise of their religion." *Mossazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 790 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005)).  The act forbids the government from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1(a).  Plaintiff bears the burden of demonstrating that a government practice imposes a "substantial burden" on his religious exercise.  *See Adkins*, 393 F.3d at 567.

If Plaintiff does seek to lodge a RLUIPA claim, that claim also is not viable.  First, Plaintiff is seeking monetary damages as relief.  *See* Doc. No. 22, p. 5 ¶ 6 (seeking $2.5 million for "continued religious abuse humiliation and pain and suffering").  RLUIPA does not permit an action against an individual for monetary damages.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Tex.*, 563 U.S. 277 (2011); *see also Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017) ("RLUIPA does not authorize a private cause of action for compensatory or punitive damages against the appellees in their individual or official capacities."); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).  "Stated more succinctly, the RLUIPA does not create a cause of action against defendants in their individual capacities, nor does it authorize claims for money damages; the RLUIPA permits claims only for prospective injunctive relief against a defendant in its official capacity."  *Mitchell v. Denton Co. Sheriff's Office*, No. 4:18-CV-343, 2021 WL 4025800, at *7 (E.D. Tex. Aug. 6, 2021), *adopted*, 2021 WL 3931116 (Sept. 1, 2021).

Plaintiff does request injunctive relief as well, but examination of his complaint reveals that what he requests is not prospective in nature.  Plaintiff asks that the Victoria County Jail

change its "rules towards the Islamic community (concerning feeding procedures and

Ramadan)."  (Doc. No. 22, p. 5 ¶ 6.)  This request, however, appears to be based on a single

April 2022 incident in which Plaintiff complained that the breakfast tray he received was not like

that of the other inmates – the others had received biscuits and gravy, while Plaintiff had

received boiled eggs, cereal, and milk.  (Doc. No. 12, p. 10.)  A dispute about this ensued

between Plaintiff and the guard who had brought the meal, and Plaintiff received a disciplinary

case.  *Id.* at 10-11.  Plaintiff complained that the jail was "playing a game trying to give me a

Kosher meal that shorted calories."  *Id.* (emphasis in original).  This was part of a "religious

war," Plaintiff says, and the meal should have included a honey bun for additional calories.  *Id.*

at 9.  Plaintiff later contended that the guard called Plaintiff's meal the "[Ramadan] diet."  *Id.* at

11.  Plaintiff's request for injunctive relief, then, appears to be aimed retrospectively at that

single incident involving, at best, negligence or carelessness by a jail employee.

  "[A]llegations of isolated incidents or negligence do not set out a viable claim under

RLUIPA because such incidents do not impose a substantial burden upon the exercise of

religious faith."  *Miles v. Lumpkin*, No. 6:20cv334, 2022 WL 4245540, at *5 (E.D. Tex. July 1,

2022) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010)); *Morgan v.

Patterson*, No. 2:17-CV-160, 2017 WL 7732439, at *9 (S.D. Tex. Aug. 8, 2017) (Ellington,

M.J.), *adopted*,  2018 WL 942458 (S.D. Tex. Feb. 15, 2018), *aff'd*, 772 F. App'x 117 (5th Cir.

2019) (plaintiff's allegations referenced only isolated incidents in which his ability to receive

kosher meals was impaired; "such isolated instances fail to constitute a substantial burden on his

right to practice his Jewish faith").  Plaintiff's allegations fail to state a viable RLUIPA claim.

  Plaintiff's other religion-related complaints are not redressable through prospective

injunctive relief.  His requested "change in practices" is too vague, for it does not reference any

other particular practice that he wishes changed, even after Plaintiff's more definite statement, to grant relief. To the extent that Plaintiff might be viewed as seeking injunctive relief regarding being fed pork, that request is moot, because Plaintiff is no longer being fed pork. *See* Doc. No. 22, p. 5 ¶ 6 (Plaintiff states he was fed pork from July to December 2021). Because Plaintiff's relief has effectively been granted, any request for injunctive relief is moot. *See Castleberry v. Tex. Health & Human Servs. Comm'n*, No. 6:20-CV-00008, 2020 WL 3442599, at *2 (E.D. Tex. May 28, 2020).

The undersigned concludes that, even with liberal construction, Plaintiff's allegations do not state a viable RLUIPA complaint.

### d.  Recommendation regarding Plaintiff's religious discrimination allegations.

The undersigned recommends that Plaintiff's religious discrimination claims be dismissed without prejudice as frivolous.

### 3.  Plaintiff's inadequate medical care claims.

Plaintiff lodges several allegations claiming that he has received inadequate medical care. Those allegations are frivolous and should be dismissed.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)).

As a pretrial detainee, Plaintiff's constitutional rights arise from the Fourteenth Amendment, not the Eighth Amendment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). Because the State punishes convicted prisoners, but not pretrial detainees, "a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). This means that pretrial detainees have a right "not to be denied, by deliberate indifference, attention to their serious medical needs." *Hinton v. Gonzalez*, No. 4:18-CV-912, 2021 WL 4955915, at *2 (S.D. Tex. Sept. 16, 2021) (Hanks, J.), *aff'd sub nom. Hinton v. Harris Cnty.*, No. 21-20550, 2022 WL 2752805 (5th Cir. July 14, 2022), *cert. denied sub nom. Hinton v. Harris Cnty., Tex.*, No. 22-363, 2022 WL 17408199 (U.S. Dec. 5, 2022) (citing *Estate of Henson v. Wichita Cnty, Tex.*, 795 F.3d 456, 464 (5th Cir. 2015); *Hare*, 74 F.3d at 650). The applicable Fourteenth Amendment medical care standard is "substantially equivalent to the Eighth Amendment protections available to a convicted prisoner." *Id.* (citing *Hare*, 74 F.3d at 644).

Prison officials must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference may be exhibited by prison doctors in their

response to prisoners' needs, or when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if he or she knows that an inmate faces a "substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (*per curiam*). "[A] prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citations omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 346). "Deliberate indifference encompasses only unnecessary and wanton

infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Further, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382 (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *E.g., Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability for supervisors under § 1983. *See id.* at 303-04; *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 835 (W.D. Tex. 2006) ("In a § 1983 action, a court cannot hold supervisory officials vicariously liable for the actions of their subordinates."); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). Rather, "the misconduct of a subordinate must be affirmatively linked to the action or inaction of the supervisor." *Snow*, 501 F. Supp. 2d at 835 (internal quotations and citations omitted). The Fifth Circuit has held that "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *See, e.g., Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins*, 828 F.2d at 303). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sept. 30, 2015) (Werlein, J.) (citing *Iqbal*, 556 U.S. at 677).

### a. Nurse Ullman.

Plaintiff claims that Nurse Ullman denied Plaintiff adequate medical care by being aware of metal allegedly lodged in Plaintiff's head,[11] but apparently not doing anything about it (despite the fact that Plaintiff alleges that Nurse Ullman took an X-ray and did not find anything amiss). He also alleges that Nurse Ullman wrongfully failed to place Plaintiff on a hypercaloric diet to help with his alleged hyperthyroid condition. (Doc. No. 22, p. 4 ¶ 2.) To support this allegation, Plaintiff cites an alleged 2015 TDCJ record (which he does not provide) in which a Dr. Clayton supposedly provided this diagnosis at TDCJ's Doctor George Beto Unit. *Id.*

When a plaintiff does not allege physical injuries, claims for damages against defendants are barred under 42 U.S.C. § 1997e(e). *See Munoz v. Lumpkin*, No. 9:19-CV-229, 2022 WL 4112369, at *3 (E.D. Tex. Aug. 2, 2022), *adopted*, No. 9:19CV229, 2022 WL 4111859 (E.D. Tex. Sept. 8, 2022) (citing *Geiger*, 404 F.3d at 375). A viable claim based on alleged inadequate medical treatment must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Further, claims amounting to negligence, malpractice, or a disagreement with treatment are not actionable under the Fourteenth Amendment. *Gobert*, 463 F.3d at 346; *Williams*, 41 F.4th at 423 (the obligation to respond to a detainee's serious medical needs with deliberate indifference under the Fourteenth Amendment is the same standard as under the Eighth Amendment).

---

[11] Plaintiff claims that an unnamed officer broke into Plaintiff's home on an unspecified date and shot him in the head. (Doc. No. 22, pp. 2, 4 ¶ 1.) Allegedly, Plaintiff has reported this incident, but no investigation has been initiated. *Id.* Plaintiff writes that "[t]his is related to [b]rain [c]omputer [i]nterface, PSYOP/Hate Crime:177 caliber pellet possible metal lodged in head." *Id.* A .177 caliber pellet is a small pellet used in air guns and BB guns. It is unclear why Plaintiff might believe that a law enforcement officer broke into his home and shot him with an air gun or BB gun. Plaintiff's claims regarding this unnamed officer and the "brain computer interface" are frivolous. Plaintiff does not state when the alleged shooting occurred or otherwise present facts demonstrating any use of excessive force by the officer. Although liberal construction of Plaintiff's claims is permitted, the Court will not, based on the few facts presented, assume the context in which Plaintiff supposedly suffered a shot to the head.

In this case, Plaintiff does not allege any physical harm suffered from allegedly leaving the supposed metal in his head.  At most, he expresses disagreement with the medical treatment he has received.  Additionally, Plaintiff has not alleged any physical harm from not being on a hypercaloric diet and not receiving a late-night snack like he claims he used to receive.  Plaintiff describes the snack as a pre-emptive measure related to his hyperthyroid condition yet fails to articulate any physical harm that has stemmed from the absence of that alleged pre-emptive measure.  Accordingly, Plaintiff cannot recover any monetary damages relating to these allegations.  *See Munoz*, 2022 WL 4112369, at *3.  Based on the foregoing, the undersigned recommends that Plaintiff's Fourteenth Amendment allegations against Nurse Ullman in her official and individual capacities be dismissed as frivolous.

### b. Nurse Gayle.

Plaintiff claims that Nurse Gayle denied Plaintiff adequate medical treatment by blocking him from seeing outside medical personnel.  (Doc. No. 22, p. 4 ¶ 3.)  Plaintiff believes this is in retaliation for Plaintiff bringing a lawsuit.  *Id*.[12]

Plaintiff has not alleged any physical harm caused by his inability to see medical personnel outside of the prison.  *See Estelle*, 429 U.S. at 106.  Further, Plaintiff has no constitutional right to see or be treated by medical personnel outside of the prison.  *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."); *Randle v. Mesrobian*, 165 F.3d 32 (Table), 1998 WL 551941, at *3 (7th Cir. Aug. 27, 1998) ("inmates have no automatic right to consult with outside physicians").  Accordingly, Plaintiff cannot recover any of the $2.5 million he has

---

[12]  The retaliation aspect of Plaintiff's claim is discussed below.

requested relating these allegations.  *See Munoz*, 2022 WL 4112369, at *3.  Plaintiff's Fourteenth

Amendment allegation against Nurse Gayle in her official and individual capacities should be

dismissed as frivolous.

### c. *Nurse Laqua*.

Plaintiff claims that Nurse Laqua denied Plaintiff adequate medical care by blocking him

from a possible medical personal recognizance ("PR") bond.[13]  (Doc. No. 22, p. 4 ¶ 4.)  Plaintiff

alleges that Nurse Laqua did this by stating there are no abnormalities shown from an X-ray of

Plaintiff's head, a statement that Plaintiff alleges is untrue.  *Id*.  Plaintiff claims that new X-rays

will show the abnormalities.  *Id*.

The allegations that Plaintiff presents against Nurse Laqua are threadbare and conclusory.

*See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  The only facts Plaintiff offers are his own

assertion that, contrary to Nurse Laqua's professional review of an X-ray showing no metal in

Plaintiff's head, Plaintiff in fact does have metal in his head and that new X-rays will show those

abnormalities.  Even if Plaintiff is correct that new X-rays would show the metal and

abnormalities, Plaintiff has not alleged sufficient facts to show that Nurse Laqua did anything to

*intentionally* harm him, nor does Plaintiff allege any physical harm caused by Nurse Laqua's

actions, much less any harm that could constitute any violation of his Fourteenth Amendment

rights.  *See Gobert*, 463 F.3d at 346.  Thus, Plaintiff cannot recover the monetary damages he

requests relating these allegations, and the allegations should be dismissed.  *See Munoz*, 2022

---

[13] It is unclear what Plaintiff means by a "medical personal recognizance bond."  That term does not appear in any Fifth Circuit case the undersigned could find, but the phrase does appear in one Oklahoma district court case.  *Lance v. Bd. of Cnty. Comm'rs of Pittsburg Cnty., Okla.*, No. CIV-17-378-RAW, 2019 WL 4581351, at *7 (E.D. Okla. Sept. 20, 2019), *aff'd in part, rev'd in part sub nom. Lance v. Morris*, No. 19-7050, 2021 WL 162343 (10th Cir. Jan. 19, 2021).  The term appears to have been used by Oklahoma prison staff and prison doctors to refer to a prisoner's release on bond for a medical reason.  *See id*.

WL 4112369, at *3.  In addition, to the extent Plaintiff is arguing that a constitutional violation arose from Nurse Laqua's decision not to order new X-rays, this is mere disagreement with his medical treatment, which is not a cognizable claim under § 1983.  *Gray v. Brownlow*, 157 F. App'x 753, 754 (5th Cir. 2005) (plaintiff's claim was properly denied as frivolous and for failure to state a claim when a plaintiff's pleadings made it clear that the plaintiff had been adequately treated and had simply disagreed with that treatment).

Further, to the extent Plaintiff alleges he was blocked from obtaining some sort of personal recognizance bond related to his medical status, Plaintiff does not plausibly allege any violation of a constitutional right, as Plaintiff has no federally protected right to any bond and has not pleaded facts demonstrating that he was subject to excessive bail.  *See Carlson v. Landon*, 342 U.S. 524, 545–46 (1952) (the Eighth Amendment does not provide a "right to bail"); *In re Newchurch*, 807 F.2d 404, 408 (5th Cir. 1986) ("The eighth amendment, made applicable to the states by the fourteenth amendment, prohibits excessive bail, while the fourteenth amendment itself protects every person from the deprivation of his liberty without due process of law.").  Thus, Plaintiff's Fourteenth Amendment allegations against Nurse Laqua in her official and individual capacities should be dismissed as frivolous.

### d. Captain Williamson.

Plaintiff alleges that Captain Williamson was aware of Plaintiff's receipt of inadequate medical care.  (Doc. No. 22, p. 4 ¶ 5.)  Plaintiff suggests that by not informing the medical staff supervisors of Plaintiff's receipt of inadequate medical care, Captain Williamson allowed the inadequate medical care to continue.  *Id*.

This claim is threadbare and conclusory, and it should be dismissed.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  First, as discussed above, Plaintiff has not articulated any

viable claim of inadequate medical care.  Second, Plaintiff has not described how, even if inadequate medical care was provided, Captain Williamson was aware of it (for Captain Williamson could not intentionally "allow" something to happen if he was never aware of the occurrence).  Plaintiff also has not asserted that Captain Williamson allowed that allegedly inadequate medical care to continue through Captain Williamson's deliberate indifference to any serious medical need.  Moreover, Plaintiff has also failed to allege any physical harm stemming from the allegedly inadequate medical care.  *See Estelle*, 429 U.S. at 106.  Therefore, he cannot recover the monetary damages he has requested relating to these allegations.  *See Munoz*, 2022 WL 4112369, at *3.  Accordingly, Plaintiff's Fourteenth Amendment allegations against Captain Williamson in his or her individual capacity should be dismissed as frivolous.

### 4. *Plaintiff's retaliation claims.*

Plaintiff claims he is being subjected to "extreme retaliation" for writing grievances, contacting multiple public officials concerning his treatment, and for allegedly having "mental mindsex" with female officers and non-security staff members.  (Doc. No. 22, p. 5 ¶ 1.)  Plaintiff states that all of the defendants in this case, except for Captain Williamson and Sheriff Marr, have participated in the "brain computer interface" by speaking or listening in on and encouraging Plaintiff's abuse.  *Id*. at 5 ¶ 2.  Plaintiff states that he was retaliated against by being placed in more restrictive custody for "no legitimate reason" from June 2021 until January 2022, being hazed, harassed and assaulted, belittled concerning his religion, and being extorted through the phone system and commissary system.  *Id*. at 5-6 ¶ 3.  Plaintiff also alleges, without further explanation, that this lawsuit has been tampered with in an effort to have it dismissed, which Plaintiff considers to be a part of his continued harassment.  *Id.* at 6 ¶ 3; Doc. No. 22-1, pp. 1-2.

Plaintiff seeks monetary relief of $2.5 million for pain, suffering, and severe emotional distress. *Id*. at 6 ¶ 4.

"Retaliation" is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

"A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d at 324–25 (citing *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998)).  Mere assertions of a plaintiff's personal belief that he is the victim of retaliation or conclusory allegations do not create a valid claim for relief.  *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).  The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Woods,* 60 F.3d at 1166.  On the element of causation, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained-of adverse incident would not have occurred.  *Id*.

Here, Plaintiff asserts frivolous, threadbare, and conclusory statements merely offering his personal belief that he is a victim of what he perceives to be retaliation.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Johnson,* 110 F.3d at 310.  His claims are frivolous and should be dismissed.

### a. *"Brain computer interface" allegations, and other allegations devoid of facts.*

Plaintiff's complaint regarding the alleged "brain computer interface" is delusional, as discussed above, and can be disregarded altogether.  Plaintiff also does not explain how prison officials knew he was allegedly having "mental mind sex" with jail officials (except perhaps through the nonsensical "brain computer interface"), so the undersigned concludes that allegation is delusional as well.

While Plaintiff asserts a laundry list of alleged wrongs, such as placement in more restrictive custody "for no legitimate reason," unspecified hazing, harassment, and assault (by unnamed persons), belittling of his religion, and "extortion" through the jail's phone and commissary systems, he has not offered, let alone produced, any evidence of who allegedly committed those acts, their motivation, or any chronology of events from which retaliation might be inferred – even after being directed to provide a more definite statement. *See Woods*, 60 F.3d at 1166. Plaintiff's allegations do not state a valid claim for retaliation under § 1983.

### b. *Denial of religious materials.*

As part of his religious discrimination allegation in his more definite statement, Plaintiff claims his wife sent him a Quran with prayer beads, a kufi, a prayer rug, and a Rastafarian bible. (Doc. No. 22, p. 2 ¶ 6.) According to Plaintiff, these items were "sent back or appropriated in retaliatory punishment for filing grievances." *Id.* (cleaned up). Although his wife allegedly did receive the prayer rug back, Plaintiff claims that she did not receive the Quran, kufi, prayer beads, or Rastafarian bible. *Id.*

While the undersigned accepts Plaintiff's factual statements as true for purposes of screening, such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions. *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019). "Mere conclusional allegations are insufficient to support a retaliation claim." *Id.* at 388. Despite being directed to provide a more definite statement, Plaintiff does not provide any direct evidence of retaliatory intent by anyone, nor does he provide any specific chronology of events from which retaliatory intent could be plausibly inferred. The undersigned concludes that Plaintiff's allegation regarding denial of these items, viewed in the retaliation context, is frivolous.

33 / 51

### c. *Feeding Plaintiff pork.*

Plaintiff claims that he was forced to eat pork while housed in the Victoria County Jail's segregation unit.  (Doc. No. 22, p. 3 ¶ 1.)  Plaintiff was allegedly fed pork from July until December 2021, during the last meal of the day.  *Id.*  Plaintiff also alleges that this was "a form of punishment related to the fact that [he had] been writing grievances concerning [his] treatment."  *Id.*  He adds that the treatment was "an act of retaliation because [he is] a practicing MUSLIM," "writing grievances and contacting public officials concerning [his] treatment.  Also for being accused of mentally having 'mind sex' with female officers here in the jail."  *Id.*, ¶ 4.  Plaintiff claims that Defendants were watching to see if he would "defile" himself by eating pork.  *Id.* at 3 ¶ 5.  Plaintiff seeks injunctive relief: he asks that Victoria County Jail change its rules towards the Islamic community concerning feeding procedures and Ramadan.  *Id.* at 5 ¶ 6.[14]  He also seeks monetary relief in the amount of $2.5 million for "religious abuse," humiliation, and pain and suffering.  *Id.*[15]

As with his claim regarding alleged denial of religious items, and despite being directed to provide a more definite statement, Plaintiff does not provide any direct evidence of retaliatory intent by anyone, nor does he provide any specific chronology of events from which retaliatory intent could be plausibly inferred.  Additionally, Plaintiff's claims present unwarranted factual

---

[14]  As discussed above, Plaintiff's requested injunctive relief appears to be based on the single April 2022 incident in which his breakfast did not include biscuits and gravy and a honey bun.

[15]  Liberally construed, Plaintiff might also be trying to assert a free exercise claim, as Plaintiff describes that jail staff did not give him an uncontaminated food tray, which the undersigned assumes to be related to the food tray's allegedly having traces of pork on it.  (Doc. No. 22-1.)  The Fifth Circuit has held, however, that this type of allegation does not state a claim for which relief may be granted.  *Baranowski*, 486 F.3d at 122 ("[W]e held that the prison was not required to accommodate a Muslim inmate's request for a kosher diet, with particularized requirements regarding the content and preparation of food." (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)).

inferences. For example, Plaintiff claims that Corporal Flores was one of the people who allegedly fed Plaintiff pork. (Doc. No. 22, p. 3 ¶ 2.) Plaintiff alleges that he asked Corporal Flores if what Plaintiff was eating was pork, and that Corporal Flores replied that it was not, that it was smoked turkey. *Id.* Plaintiff apparently insists, however, without further support or evidence, that the meat was actually pork. That unwarranted factual inference does not merit an assumption of truth for purposes of screening. Plaintiff further alleges that this feeding was done despite Plaintiff's being on a "no pork diet" and that Plaintiff does not know who ordered him to be fed pork. *Id.* To clarify, Plaintiff does not allege that Corporal Flores was aware whether Plaintiff was on a no-pork diet, or why,[16] only that Corporal Flores fed Plaintiff pork. The undersigned concludes that Plaintiff's allegation regarding denial of these items, viewed in the retaliation context, is frivolous.

### d. *Nurse Gayle.*

Construing the allegation liberally, Plaintiff also attempts to bring a retaliation claim against Nurse Gayle by alleging that she is preventing Plaintiff from seeing an outside dentist, thereby forcing Plaintiff to wear a broken partial, in retaliation for filing this lawsuit. (Doc. No. 22, p. 4 ¶ 3.) Plaintiff's allegations, however, merely reflect his personal belief that he is the victim of retaliation. *See Jones*, 188 F.3d at 325. He does not specify facts setting forth a chronological series of events from which retaliation can be inferred. In fact, he alleges that this incident occurred before his lawsuit was even filed; thus, any complaint regarding alleged denial of medical or dental care in this context fails to allege a viable retaliation claim.

---

[16] Plaintiff does not claim that Corporal Flores was the person who allegedly refused to label Plaintiff as Muslim in the jail's records, nor does he allege any other facts to support any claim that Corporal Flores was or could have been aware that Plaintiff was Muslim.

Plaintiff's retaliation claim is even more doubtful considering Plaintiff has neither alleged nor shown that Nurse Gayle knew of any lawsuit filed by Plaintiff.  No defendant has yet been served in this case, and Plaintiff has offered no allegation or evidence that he notified any of the defendants that he filed this (or any other) lawsuit against them.  Thus, Plaintiff fails to make the necessary allegation of causation, as well as the necessary allegation that Nurse Gayle intended to act in retaliation for Plaintiff's filing of a lawsuit.  Plaintiff's retaliation claim should therefore be dismissed.  *Cf. Manning v. Chevron Chem. Co.  LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) (if decisionmakers were completely unaware of plaintiff's protected activity, then it could not be said that decisionmakers might have been retaliating against plaintiff for having engaged in that activity).

### e.  Requested relief is unavailable.

For his retaliation allegations, Plaintiff requests injunctive relief in the form of "changing [the Victoria County Jail's] rules toward the ISLAMIC community."  Because Plaintiff fails to allege the existence of any rules, much less unconstitutional ones, established by the Victoria County Jail relating to the Islamic inmate population, the Court cannot provide the requested relief.  Plaintiff also asks for injunctive relief regarding the Victoria County Jail's rules "concerning feeding procedures and [Ramadan]" (Doc. No. 22, p. 5 ¶ 6), but that request appears to be based on the single April 2022 incident discussed above, in which Plaintiff's breakfast did not include biscuits and gravy and a honey bun.  Plaintiff does not otherwise state what general feeding procedures he wants changed, or how the month of Ramadan in any way affects this lawsuit beyond the single April 2022 incident.  He also does not provide details suggesting that he was denied meals without pork pursuant to any prison rule, regulation, or policy, or because of his religion.  *See Morgan*, 2017 WL 7732439, at *8.

Nor can the Court provide relief in the form of compensatory damages, as Plaintiff has not pleaded any physical harm arising from these retaliation allegations. *See Munoz*, 2022 WL 4112369, at \*3. Accordingly, the undersigned recommends that Plaintiff's retaliation claims be dismissed.

### 5. *Plaintiff's "hate crime" and harassment allegations.*

Plaintiff alleges that various defendants committed "hate crimes" against him and harassed him. None of his allegations states a viable claim; all should be dismissed as frivolous. The undersigned first summarizes the claims, and then explains why they should be dismissed.

Plaintiff claims that, as a result of Plaintiff's grievances, contacting public officials, and filing suit, he was "[u]njustly punished and abused . . . being named a homosexual, child molester, and Enemy of God through promoted propaganda in efforts of defamation to tarnish [his] [i]mage and ruin [his] credibility." (Doc. No. 22, p. 6 ¶ 1.) Plaintiff also alleges that officers are interrupting his phone calls in jail. (Doc. No. 16, p. 1.) In response to the undersigned's question regarding how officers are interrupting Plaintiff's phone calls in prison, Plaintiff responds that he is not sure how it is being done, but that he assumes it is with the use of spyware or through "Correct Commissary's access to the phone system." (Doc. No. 22, p. 7 ¶ 3.) Plaintiff also states that his phone account PIN number has an alternate message stating that "Arelia" divorced him. *Id*. Further, Plaintiff claims that prison officers granted the general inmate population access to his family history and information about his children by "cybersleuthing his Facebook page and I-cloud account" and then passing the information amongst inmates via the intercom system. *Id*. at 7 ¶ 4. Plaintiff does not allege any physical injury stemming from these asserted wrongs. Regarding this claim, Plaintiff seeks injunctive

relief: he asks that criminal investigations be initiated against each of the named defendants. *Id.* at 13-14 ¶ 29.  He also seeks monetary relief in the amount of $500,000 from each defendant. *Id.*

As a preliminary matter, Plaintiff's requested relief of criminal investigations is not available in a § 1983 civil rights action.  There is no constitutional right to have someone criminally prosecuted. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  Numerous courts have held that the relief Plaintiff seeks is simply not available in a § 1983 civil rights case. *E.g.*, *Nelson v. State of Va.*, No. 7:16CV00055, 2016 WL 3963242, at *2 (W.D. Va. July 21, 2016) (no legal basis for court to order criminal investigation or charges against state officials); *Williams v. Davis*, No. 3:09-CV-0296-B, 2009 WL 928318, at *2 (N.D. Tex. Apr. 6, 2009) ("to the extent Plaintiff seeks to criminally prosecute someone, such relief is not available in a § 1983 civil rights action") (internal quotation marks omitted); *Worthy v. Francis*, No. 3:02-CV-2102N, 2002 WL 31553847, at *2 (N.D. Tex. Nov. 14, 2002) (same); *Jones v. Conway*, No. Civ. A 9203883, 1992 WL 185578, at *1 (E.D. Pa. July 21, 1992) (same); *see also Houston v. Collerman*, No. 9:16-CV-1009, 2016 WL 6267968, at *11 (N.D.N.Y. Oct. 26, 2016) ("it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual").  In addition, Plaintiff cannot seek compensatory damages against these defendants where he alleges no physical harm arising from their alleged "hate crimes" and harassment. *See Munoz*, 2022 WL 4112369, at *3.  Although the Court could dismiss all of these allegations based solely on Plaintiff's inability to recover the requested relief, the undersigned addresses the allegations in more depth below.

### a. Plaintiff's hate crime and harassment allegations I: "Brain computer interface."

#### i. Officer Garza.

Plaintiff alleges that Officer Garza helped with the alleged "hate crimes" by being one of the initial participants in establishing the "brain computer interface," which was purportedly used to spread and promote propaganda. (Doc. No. 22, p. 7 ¶ 6.)

#### ii. Corporal Flores.

Allegedly, Corporal Flores helped with the "hate crimes" by making a derogatory statement towards Plaintiff and accusing Plaintiff, in front of the inmate population, of raping Plaintiff's granddaughter. (Doc. No. 22, pp. 7-8, ¶ 7.) According to Plaintiff, Corporal Flores also had knowledge of the "brain computer interface" from its inception. *Id*. at 8, ¶ 8. As mentioned previously, Corporal Flores also allegedly fed Plaintiff pork, despite allegedly knowing that Plaintiff is a practicing Muslim. *Id*. Finally, Plaintiff alleges that Corporal Flores threatened to kill Plaintiff. *Id*.

#### iii. Officer Little.

Plaintiff alleges that Officer Little was also one of the first officers to participate in the "brain computer interface" and spread propaganda about Plaintiff "being a child molester, homosexual, and Enemy of God." (Doc. No. 22, p. 8 ¶ 10.)

#### iv. Officer T. Gilbert/Hennikie.

Plaintiff alleges that Officer T. Gilbert/Hennikie helped with "hate crimes" by being one of the initial orchestrators of the "brain computer interface." Plaintiff also alleges that Officer Gilbert spread propaganda around the jail and instigated the promotion and spread of propaganda. (Doc. No. 22, p. 10 ¶ 17.)

###### v.  *Officer Ellis.*

Plaintiff alleges Officer Ellis participated in the "hate crimes" by participating in the "brain computer interface" and helping spread propaganda of Plaintiff being a child molester, homosexual, and enemy of God.  (Doc. No. 22, p. 10 ¶ 18.)  Plaintiff also claims that Officer Ellis makes derogatory remarks towards him.  *Id*. at 11 ¶ 18.

###### vi.  *Officer Eshenburg.*

Plaintiff alleges that Officer Eshenburg participated in the hate crimes through assisting in the "brain computer interface," and "being a party to" Officer Walters' harassment.  (Doc. No. 22, p. 12 ¶ 22.)

###### vii.  *Corporal Johnson.*

Plaintiff alleges that Corporal Johnson participated in the hate crimes by "being a party to" Sergeant Gonzalez's attempted assault and through her awareness of the "brain computer interface."  (Doc. No. 22, p. 12 ¶ 23.)

###### viii.  *Officer Partida.*

Plaintiff alleges that Officer Partida participated in the hate crimes by being "one of the initial orchestrators in [b]rain [c]omputer [i]nterface," and by spreading rumors that Plaintiff is a child rapist.  (Doc. No. 22, p. 13 ¶ 26.)

###### ix.  *Breona Garcia/Flores.*

Plaintiff alleges that Breona Garcia/Flores participated in the "hate crimes" by spreading propaganda to the Hispanic inmates and officers that Plaintiff had sexually assaulted her.  (Doc. No. 22, p. 13, ¶ 28.)  According to Plaintiff, this was "one of the main reasons for the brain computer interface experiment," as the officers wanted to keep watch over Plaintiff and his

40 / 51

actions.  *Id.*  Plaintiff claims that the "propaganda" that Ms. Garcia/Flores spread caused him to receive abuse, violations of his civil rights, and retaliation.  *Id.*

### x.  *These "brain computer interface" allegations are frivolous.  They should be dismissed.*

In addition to being threadbare and conclusory, *see Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555, Plaintiff ties all of the allegations against Officer Garza, Corporal Flores, Officer Little, Officer T. Gilbert/Hennikie, Officer Ellis, Officer Eshenburg, Corporal Johnson, Officer Partida, and Breona Garcia/Flores to the purported "brain computer interface," which is a fantastical concept that renders these claims frivolous in nature.  Accordingly, the undersigned recommends these claims be dismissed as frivolous.

### b.  *Hate crime and harassment allegations II: crude remarks.*

### i.  *Maintenance worker Moralez.*

Plaintiff claims maintenance worker Moralez subjected him to "hate crimes"[17] by helping create technology to shout derogatory remarks out of an alternate speaker rather than over the direct intercom.  (Doc. No. 22, p. 7 ¶ 5.)  Plaintiff claims that Moralez also followed him around the Victoria County Jail to Plaintiff's housing to make remarks such as "You can't be raping people in jail."  *Id.*  After making such statements, Moralez allegedly told Plaintiff that he would let him out if it was up to Moralez.  *Id.*  Based on this interaction, Plaintiff began thinking he was

---

[17] "Hate crime" is defined as a crime that is committed on the "basis of race, color, religion, national origin, sexual orientation, gender, gender identity, or disability."  *See* The United States Department of Justice, *Laws and Policies: Federal Laws and Statutes*, https://www.justice.gov/hatecrimes/laws-and-policies (last visited Jan. 11, 2023).  What Plaintiff repeatedly describes as "hate crimes" are, at best, unbecoming conduct in the form of negative comments allegedly directed at Plaintiff, not any sort of crime committed on the basis of the reasons enumerated in the definition of "hate crime."  Further, Section 1983 is not the proper jurisdictional avenue for bringing a "hate crime" allegation.  Rather, a "hate crime" allegation is a criminal matter which can be brought to the Court only by the Attorney General of the United States, so a plaintiff wishing to bring an action under the Hate Crimes Act should be referred to the United States Attorney.  *Dean v. Prieto*, No. 5:11-CV-013-C, 2013 WL 5405465, at *3 (N.D. Tex. Sept. 26, 2013).

receiving this particular treatment from Moralez for "being a child moleste[r] and homosexual." *Id.*

### ii. Corporal Garcia.

According to Plaintiff, beginning on or about June 6, 2022, Corporal Garcia allegedly spread propaganda by screaming "snitch" wherever Plaintiff was housed.  (Doc. No. 22, pp. 6-7 ¶ 2.)

### iii. Officer Gabrish.

Plaintiff alleges Officer Gabrish helped with "hate crimes" by being one of the first officers to spread propaganda that Plaintiff was "homosexual."  (Doc. No. 22, p. 8 ¶ 9.) According to Plaintiff, Officer Gabrish would also pass by Plaintiff's cell and call him a derogatory name.  *Id.*

### iv. Ms. Barrela.

Plaintiff states that Ms. Barrela is one of the Commissary workers who is a contract employee through Correct Solutions.  (Doc. No. 22, p. 8 ¶ 11.)  Plaintiff alleges that Ms. Barrela spread propaganda about Plaintiff by walking through the hallways in areas where Plaintiff was housed and screaming that he was receiving this treatment because he raped a baby.  *Id.* Allegedly, Ms. Barrela also threatened Plaintiff with more jail time.  *Id.* at pp. 8-9 ¶ 11.

### v. "Ms. S."

Plaintiff claims that "Ms. S," who allegedly refuses to give her real name and goes by the name Arelia, is a contract employee through Correct Commissary who was "a party to" Ms. Barrela's spreading of propaganda.  (Doc. No. 22, p. 9 ¶ 12.)

### vi. Sergeant Valadez.

Plaintiff alleges Sergeant Valadez participated in hate crimes by "having knowledge of [the entire] situation from the beginning [and] denying [Plaintiff his] religious preference by not having it documented once information was [relayed] to him." (Doc. No. 22, p. 9 ¶ 13.) Plaintiff also claims Sergeant Valadez participated in a "hate crime" by processing a disciplinary case against Plaintiff in which Plaintiff claims he was physically assaulted by being hit in the face with an orange juice container. *Id.* Plaintiff claims this disciplinary case violated Plaintiff's due process rights because it was retaliation. *Id.*

### vii. Ms. Mathis.

Plaintiff alleges that Ms. Mathis participated in the "hate crimes" by involving herself in acts already being perpetrated against Plaintiff and helping to spread the promoted propaganda among the inmate population that Plaintiff is a child molester and a homosexual. (Doc. No. 22, p. 10 ¶ 15.)

### viii. Officer Charleston.

Plaintiff alleges that Officer Charleston participated in the "hate crimes" by making a derogatory comment towards Plaintiff and helping spread the promoted propaganda, which allegedly caused Plaintiff to incur harassment and abuse from other inmates. (Doc. No. 22, p. 11 ¶ 19.)

### ix. Officer Leimkie.

Plaintiff alleges that Officer Leimkie participated in the "hate crimes" by walking through the hallway screaming a crude statement about Plaintiff. (Doc. No. 22, p. 12 ¶ 21.) Plaintiff also alleges Officer Leimkie spread rumors about Plaintiff that were connected to the "brain computer interface" and caused Plaintiff to suffer from harassment and abuse. *Id.*

### x.  Captain Williamson.

Plaintiff alleges that Captain Williamson allowed "hate crimes" to occur because Plaintiff informed Captain Williamson of the ongoing issues and asked Captain Williamson to transfer him to another jail.  Captain Williamson allegedly did not do so.  (Doc. No. 22, p. 12 ¶ 24.)

### xi.  Sheriff Marr.

Plaintiff alleges that Sheriff Marr "allowed" the "hate crimes" by ignoring Plaintiff's requests for transfer.  (Doc. No. 22, pp. 12-13 ¶ 25.)

### xii.  Officer Moreno/Avila.

Plaintiff alleges that "Officer Moreno/Avila" participated in the hate crimes by stating Plaintiff was going to regret what Plaintiff did to her when coming from the recreation yard and then getting on the intercom to make a crude statement about Plaintiff.  (Doc. No. 22, p. 13 ¶ 27.) The crude intercom statement allegedly caused Plaintiff to receive "hate" from the Hispanic inmate and officer community.  *Id.*

### xiii.  The crude remark allegations are frivolous.  They should be dismissed.

It is well-settled that crude, unprofessional, or harassing remarks, even verbal threats by prison staff to an inmate, do not rise to the level of a constitutional violation.  *Field v. Corr. Corp.*, 364 F. App'x 927, 930 (5th Cir. 2010); s*ee also Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable" constitutional claims); *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (concluding that verbal threats do not rise to the level of a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1991) (citing *Bender v. Brumley*, 1 F.3d 271 (5th Cir. 1993)) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under Section 1983.")  Here, Plaintiff's

allegations against these defendants are all threadbare and conclusory, and do not state any violation of a constitutional right.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  In these allegations, Plaintiff describes nothing more than unbecoming conduct by the defendants, not any crimes or "hate crimes."  Therefore, the undersigned recommends these claims be dismissed as frivolous.

### c. *Hate crime and harassment allegations III: physical contact.*

Plaintiff alleges that three defendants engaged in hate crimes or harassment that included alleged physical contact.  Those claims are not viable.

#### i. *Officer Emrick-Smith.*

Plaintiff alleges that Officer Emrick-Smith helped with "hate crimes" by verbally abusing and physically assaulting Plaintiff.  (Doc. No. 22, p. 9 ¶ 14.)  Plaintiff claims that Officer Emrick-Smith hit him in the face with an orange juice container but that, from this incident, Plaintiff was charged for an assault.  *Id*.  Plaintiff also mentions "blocking" a cup of coffee where somehow the coffee was spilled on Officer Emrick-Smith's pants leg.  *Id*.  Apparently, after the spill, Officer Emrick-Smith allegedly made a derogatory remark.  *Id*.  Plaintiff does not allege any injury stemming from the orange juice container incident.

#### ii. *Officer Walters.*

Plaintiff alleges Officer Walters participated in the "hate crimes" by "being allowed to throw [Plaintiff] on the floor (out of a wheelchair) after having a seizure."  (Doc. No. 22, p. 10 ¶ 16.)  Plaintiff allegedly laid on the floor for two or three days without seeing medical personnel. *Id*.  Plaintiff, however, does not allege that he suffered any injury from Officer Walters' actions. Officer Walters also allegedly promoted propaganda that Plaintiff was a child molester and

homosexual.  *Id*.  According to Plaintiff, this promoted propaganda caused Plaintiff to experience altercations with other inmates.  *Id.*

### iii.  *Sergeant Gonzalez.*

Plaintiff alleges Sergeant Gonzalez participated in hate crimes through his awareness about the alleged establishment of the "brain computer interface" from its initiation.  (Doc. No. 22, p. 11 ¶ 20.)  Plaintiff also claims Sergeant Gonzalez made sexually suggestive remarks towards Plaintiff through the intercom system.  *Id*.  Further, Plaintiff claims Sergeant Gonzalez shot at him with a CCD[18] while Plaintiff was housed in the jail's segregation unit.  *Id*.  In describing this incident, Plaintiff claims that another inmate was pouring urine in his cell, so Plaintiff covered his window in an effort to get the attention of a ranking official so that he could be moved to another cell.  *Id*.  Plaintiff was at the back of his cell holding his mattress because he thought that he might be shot with the taser while trying to explain the situation.  *Id*.  When Plaintiff looked around the mattress to communicate with Sergeant Gonzalez, Sergeant Gonzalez allegedly fired the CCD at Plaintiff's left eye.  *Id*.  Plaintiff allegedly blocked the pepper ball with his mattress.  (Doc. No. 22, p. 11 ¶ 20.)  Plaintiff states that Sergeant Gonzalez said over the radio, "I missed the eye," which "let [Plaintiff] know" that Sergeant Gonzalez fired the CCD with intent.  *Id*.  According to Plaintiff, this was an attempted aggravated assault.  *Id*.  Plaintiff does not allege that he suffered any injury from this incident.

---

[18]  According to Plaintiff, a "CCD" is a tactical weapon that uses pepper balls to help restrain inmates who are unruly.

### iv.  Plaintiff's allegations regarding these defendants are frivolous.  They should be dismissed.

Plaintiff's allegations against these defendants are all threadbare and conclusory.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  While the claimed facts include allegations of violence committed against Plaintiff, review of Plaintiff's the undersigned concludes that Plaintiff is offering these alleged incidents of violence solely as support for his "hate crime" claims, not to assert additional claims (such as excessive force claims) against these defendants.[19]  As such, these claims should be dismissed as frivolous.

### F.  Summary.

Having reviewed Plaintiff's allegations, the undersigned concludes that they are frivolous.  The undersigned therefore recommends their dismissal without prejudice.  Because dismissal is without prejudice, the undersigned recommends that the district court not appoint a guardian ad litem for Plaintiff.  *See Berrios*, 564 F.3d at 134; *Berry*, 2017 WL 410339, at *2 (dismissing *pro se* complaint without prejudice at the screening stage without appointing guardian ad litem because complaint was frivolous); *Moreno*, 2016 WL 1000318, at *2 (dismissing complaint by incompetent plaintiff without prejudice and holding that the court "need not appoint a guardian because it was "clear that no substantial claim can be raised on Plaintiff's behalf based on the allegations" of the complaint); *Powell*, 680 F.3d at 307 (inquiry

---

[19]  Although Plaintiff is entitled to liberal construction of his claims, the undersigned will not attempt to extrapolate his harassment claim into an excessive force claim.  To the extent that Plaintiff might wish to bring excessive force claims, those claims are separate and distinct from those alleged in this case and outlined in this memorandum and recommendation – they belong in a separate lawsuit, which Plaintiff could file separately if he elected to do so.  *See Kindred v. Lumpkin*, No. 6:21CV166, 2021 WL 3617847, at *3 (E.D. Tex. June 3, 2021), *adopted*, No. 6:21-CV-166-JDK-KNM, 2021 WL 3185279 (E.D. Tex. July 28, 2021) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (additional citations omitted) ("Unrelated claims against different defendants belong in different suits . . . .").  In any event, a pretrial detainee's *de minimis* injuries are insufficient to maintain an excessive force claim under Fifth Circuit precedent.  *See Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018).  Plaintiff does not allege that he suffered any injury at all.

into whether to appoint guardian ad litem for pro se litigant "would usually occur after the preliminary merits screening").

### G. *Plaintiff's request for counsel.*

Plaintiff submitted a request for appointment of counsel. (Doc. No. 6.) The undersigned denied that motion without prejudice, pending the screening of Plaintiff's complaint. (Doc. No. 19, p. 1.) In a letter to the Court, Plaintiff has again requested the appointment of counsel. (Doc. No. 24, p. 3.)[20] Plaintiff's incompetency finding merits additional discussion regarding the appointment issue.

A court has discretion to request an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915(e)(1). But there is no automatic right to the appointment of counsel in a § 1983 case. *Baranowski*, 486 F.3d at 126; *Wright v. Dallas Cnty. Sheriff's Dept.*, 660 F.2d 623, 625-26 (5th Cir. 1981). A district court may appoint counsel "if doing so would advance the proper administration of justice," *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989), but such appointment is not required "unless the case presents exceptional circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). Courts may consider many factors in deciding whether to appoint counsel, including, among others, the type and complexity of the case, the litigant's ability to adequately investigate and present the case, the level of skill required to present the evidence. *Baranowski*, 486 F.3d at 126; *see also Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992). One court has noted that even a plaintiff who has been declared incompetent in his criminal prosecution must still satisfy the test for appointment of counsel in a

---

[20] That request arises in the context of an application for a writ of habeas corpus that Plaintiff has also attempted to file as part of this case. (Doc. No. 23.) The undersigned is severing that application into a standalone action, but in an abundance of caution considers it in the context of Plaintiff's § 1983 action as well.

civil case under 28 U.S.C. § 1915(e)(1).  *See Pond v. Doe*, No. 3:21-cv-05339-RJR-JRC, 2022 WL 1061922, at *2 (W.D. Wash. Apr. 8, 2022).

Some authority also indicates that one permissible factor for consideration is the apparent strength of the plaintiff's case.  *See Aguirre v. Intelogic Trace, Inc.*, 980 F.2d 1443, 1992 WL 366848, at *1 (5th Cir. 1992) (unpublished table opinion) (outlining various factors for district court's consideration in evaluating a request for recruitment of counsel in a Title VII claim, including "the merits of the claim"); *Watts v. Kidman*, 42 F.4th 755, 765 (7th Cir. 2022) (collecting cases from the Eighth, Ninth, Eleventh, and D.C. Circuits and holding that recruitment of counsel is "unwarranted if the plaintiff's chances of success are extremely slim") (internal quotation marks omitted).  As the Second Circuit stated, although a court "may request an attorney to represent any person unable to afford counsel … it may properly deny a motion to appoint counsel – even for a minor or incompetent person – when it is clear that no substantial claim might be brought on behalf of such a party."  *Berrios*, 564 F.3d at 134 (internal quotation marks and citations omitted).

Review of Plaintiff's filings in this case, as set forth above, reveals that there is no substantial claim that can be brought on behalf of Plaintiff.  Plaintiff's allegations do not state any viable § 1983 claims.  Additionally, despite the delusional nature of his "brain computer interface" allegation, Plaintiff has adequately articulated the claims he wishes to bring, meritless though they may be, and the undersigned concludes that Plaintiff has pleaded his best case. Significantly, Plaintiff has not suggested that he believes himself incapable of representing himself because of any incompetence or other mental issues.  Rather, Plaintiff's reasons for requesting appointment of counsel are the Victoria County Jail's alleged lack of a law library and its alleged resistance to Plaintiff's pursuit of this case.  *See* Doc. No. 6, pp. 1-2; Doc. No. 6-1; *see*

*also* Doc. No. 24, p. 3.  Plaintiff does not show that he cannot investigate or present his case without assistance.  *Cf. Ramirez v. Delcore*, No. C A C-07-48, 2007 WL 508940, at *1 (S.D. Tex. Feb. 13, 2007) (Ellington, M.J.) (appointment of next friend for plaintiff unnecessary because record demonstrated plaintiff able to pursue litigation himself).  Moreover, the issues raised, though numerous, are not so complex as to elevate this case to the level of "exceptional circumstances," and Plaintiff does not allege otherwise.

The undersigned therefore recommends that the district court deny the motion for appointment of counsel (Doc. No. 23) as moot.

**H.  Conclusion and recommendation.**

For the foregoing reasons, the undersigned recommends that Plaintiff's § 1983 claims be **DISMISSED without prejudice** as frivolous.  Plaintiff's second request for appointment of counsel (Doc. No. 24) should be **DENIED** as moot.

**I.  Notice.**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on February 7, 2023.

 

MITCHEL NEUROCK
United States Magistrate Judge

51 / 51